IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS ex rel. KENYA SIBLEY, | ) ) ) ) | |
| Plaintiff, | ) ) | 13 C 7733 |
| v. | ) ) ) | Judge Jorge L. Alonso |
| A PLUS PHYSICIANS BILLING SERVICE, INC., HANDRUP and ASSOCIATES, ERIC SCHOEWE, LAURIE GENTILE, and THEODORE HANDRUP, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Relator, on behalf of the United States and the State of Illinois, sues defendants for their alleged violations of the federal and state False Claims Acts ("FCAs") and the Illinois Insurance Claims Fraud Prevention Act. Defendants Laurie Gentile and Eric Schoewe have filed motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the second amended complaint.[1] For the reasons set forth below, the Court grants Schoewe's motion and grants in part and denies in part Gentile's motion.

**Facts**

From June 2011 to August 2012, relator worked as a medical biller for defendant A Plus Physicians Billing Service, Inc. ("A Plus"). (2d Am. Compl. ¶ 8.) A Plus is a billing agency that

---

[1] Defendants A Plus Physicians Billing Service, Inc., Handrup and Associates, and Theodore Handrup have answered the second amended complaint.

submits claims for reimbursement to insurers, like Medicare and Medicaid, on behalf of its healthcare-provider clients and, in return, receives a percentage of the reimbursement amounts recovered. (*Id.* ¶¶ 43-44.) Defendant Schoewe is president and one of the owners of A Plus and "is primarily responsible for submitting claims." (*Id.* ¶ 10.) Defendant Gentile was relator's supervisor at A Plus and assisted Schoewe with claims submissions. (*Id.* ¶ 11.)

When submitting claims for Medicaid reimbursement, A Plus is required to set forth the services provided to the patient using Current Procedural Terminology ("CPT") codes established by the American Medical Association and Revenue Codes published by the U.S. Department of Health and Human Services' Centers for Medicare and Medicaid Services ("CMS"). (*Id.* ¶ 49.) Each CPT code corresponds to a specific service and reimbursement rate set forth in CMS' Physician Fee Schedule. (*Id.*) Reimbursement rates depend on the CPT code for the service and the place at which the service ("POS") is provided. (*Id.* ¶ 70.)

To properly submit a claim, A Plus should receive a "superbill" from a client that sets forth, among other things, the name of the patient and healthcare provider, the service provided, the date and location of the service, the proper CPT code, and the amount charged. (*Id.* ¶¶ 47, 75.) An A Plus biller then inputs the CPT code and the code for the healthcare provider and location into a computer program called 4-C, which generates a claim form that is sent to A Plus' billing vendor for submission to the appropriate insurer. (*Id.* ¶¶ 66-69.)

In reality, however, A Plus' clients did not provide some or all of the necessary information on the superbill. (*Id.* ¶ 75.) Thus, A Plus had a "default" protocol pursuant to which the coding "would be added based upon assumed treatments replicating the first visit." (*Id.* ¶ 76.) Gentile filled in the CPT codes, POS codes, and diagnoses on superbills without supporting documentation, told

relator to change or select certain CPT and POS codes or to use different CPT codes to bill different insurers for the same service, and told relator to change provider names to those covered by the patients' insurance – all to maximize reimbursements. (*Id.* ¶¶ 77-84, 86-88, 91-93, 96, 98-100.) Moreover, after claims were denied, Gentile would change the CPT codes and resubmit them to obtain reimbursement. (*Id.* ¶ 94.)

A Plus' clients were aware of these fraudulent billing practices and gave A Plus "monetary incentives . . . to ensure that [it] altered bills to generate the maximum reimbursements." (*Id.* ¶¶ 101-02.) Relator also received bouses from A Plus if she maintained a certain level of reimbursements. (*Id.* ¶¶ 103-04.)

Relator repeatedly complained to Gentile about being asked to bill improperly and was told each time to bill as A Plus instructed her. (*Id.* ¶¶ 108-10.)

In March 2012, shortly after Gentile announced her impending retirement, relator met with Schoewe, Gentile, and the principals of A Plus' client Handrup and Associates, Dr. Theodore Handrup and Mrs. Cynthia Handrup, to discuss taking responsibility for the Handrup account from Gentile. (*Id.* ¶¶ 111-12.) During the meeting, Dr. Handrup said he wanted A Plus to continue billing as Gentile had, to avoid any "red flags" from Medicare. (*Id.* ¶ 114.) Schoewe and Gentile promised that the billing would remain the same. (*Id.* ¶ 115.)

After the meeting, relator told Schoewe that, when she was in charge of the Handrup account, she would not bill improperly, and he said he was "okay" with that. (*Id.* ¶ 116.)

From March through July 2012, relator was in charge of the Handrup account and refused to bill for claims that lacked supporting documentation and to alter CPT, POS, or provider codes. (*Id.* ¶ 117.) At the end of April, Schoewe asked relator why the Handrup account was generating

3

less revenue. (*Id.* ¶ 118.) She told him there was a stack of claims she could not submit because they were not properly documented. (*Id.*) Schoewe ordered her to get the claims approved. (*Id.*)

In July 2012, relator took three weeks' medical leave from work. (*Id.* ¶ 119.) When she returned in early August, Schoewe told her that A Plus was able to generate more revenue from the Handrup account in her absence and asked if she could maintain that level of revenue generation. (*Id.*) Relator said she would not submit improper claims, and Schoewe fired her. (*Id.*)

## **Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in relator's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In Count I, relator alleges that Schoewe and Gentile violated § 3729(a)(1)(A) and (B) of the federal FCA, which provide:

> [A]ny person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A), (B). To state a viable claim under § 3729(a)(1)(A), relator must allege that defendants presented, or caused to be presented, a claim for payment to the United States that they knew was false or fraudulent. *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570

4

F.3d 907, 920 (7th Cir. 2009). To state a viable claim under § 3729(a)(1)(B), relator must allege that defendants knowingly made or caused to be made a false statement to receive payment from the government. *U.S. ex rel. Walner v. NorthShore Univ. Healthsys.*, 660 F. Supp. 2d 891, 896 (N.D. Ill. 2009). Moreover, both claims must be pleaded "with particularity" as required by Rule 9(b). *Id.*; *see U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (applying Rule 9(b) to FCA claims).

Schoewe argues that relator's allegations do not support the inference that he knowingly made or caused a false claim to be made to the government. The Court agrees. The only allegations relator makes specifically about Schoewe are that: (1) he is the president and a co-owner of A Plus, and is "responsible for submitting the claims" created by its billers; (2) he, along with Gentile, "trained [relator] on the job"; (3) he told relator that "her bonus depended on maintaining a certain level of reimbursements"; (4) realtor "complained to . . . [him] about being asked to bill improperly" (5) he promised the Handrups, upon Gentile's retirement, that A Plus would "continue billing in the same fashion"; (6) he told relator he was "okay" with her "billing [the Handrup account] properly"; and (7) he ordered relator to get approval for Handrup claims she had not submitted for lack of documentation. (2d Am. Compl. ¶¶ 10, 37, 65, 103, 108, 115-16, 118.) These allegations are insufficient to state an FCA claim against Schoewe in accordance with Rule 9(b). *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (stating that Rule 9(b) requires that "the who, what, when, where, and how" of fraud claims be alleged). Accordingly, the Court grants Schoewe's motion to dismiss Count I.

The situation is different, however, for Gentile. Relator alleges, for example, that Gentile selected, or told relator to select, CPT, POS, and provider codes to maximize reimbursement, rather

5

than to reflect actual services provided, and submits documents that purport to show these actions. (*See* 2d Am. Compl. ¶¶ 78-79, 81, 84, 88-90, 93 & Ex. 1, KS 60, 65, 76, 88-89, 95.) These allegations are specific enough to state an FCA claim. Thus, Gentile's motion to dismiss Count I is denied.

In Count II, relator alleges that Schoewe and Gentile violated the federal FCA by accepting kickbacks for submitting false claims to the government. *See* 42 U.S.C. § 1320a-7b(b) ("Anti-Kickback Statute") (making it a felony "to knowingly and willfully solicit[] or receive[] any remuneration (including any kickback, bribe, or rebate) . . . in return for purchasing . . . or ordering any good . . . [or] service . . . for which payment may be made in whole or in part under a Federal health care program"); *U.S. ex rel. Sharp v. Consol. Med. Transp., Inc.*, No. 96 C 6502, 2001 WL 1035720, at *6-10 (N.D. Ill. Sept. 4, 2001) (recognizing a cause of action under the FCA predicated on a violation of the Anti-Kickback Statute). To state such a claim, relator must allege, with the specificity required by Rule 9(b), that Schoewe and Gentile: "(1) knowingly and willfully (2) offered[,] paid[, solicited or received] (3) remuneration (4) in return for purchasing or ordering any item or service for which payment may be made under a federal health care program." *United States v. Omnicare, Inc.*, 11 C 8980, 2014 WL 1458443, at *9 (N.D. Ill. Apr. 14, 2014). Plaintiff's only "kickback" allegations – that she once saw Gentile open a letter from a client that contained a $17,000.00 check and was told by Gentile that relator could get such checks once she took over the Handrup account (2d Am. Compl. ¶¶ 105-06) – do not state an FCA kickback claim against either Gentile or Schoewe. Accordingly, the Court grants their motions to dismiss Count II.

In Count III, relator alleges that Schoewe and Gentile violated the federal FCA by firing her in retaliation for her refusal to submit false claims. In relevant part, the FCA states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h). The prior version of the statute, which was in effect until 2009, stated:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *by his or her employer* because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (1994) (emphasis added). Relator contends that Congress' elimination of the italicized phrase from the statute evidences its intent to expand liability under it to individuals as well as employers.

The parties do not cite, and the Court could not find, any federal appellate case that addresses this issue, but most district courts to have done so have rejected relator's contention. The reasoning of *Aryai v. Forfeiture Support Associates* is illustrative:

> [T]he primary purpose of the 2009 amendment to the FCA's anti-retaliation provision was to expand what formerly was a cause of action only for an "employee" into a cause of action for an "employee, contractor, or agent." According to the House Report, Congress intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover any retaliation against those who planned to file an action (but did not), people related to or associated with relators, and contract workers and others who are not technically 'employees.'" H.R. Rep. No. 111-97, at 14 (2009). The Report contains no similar statement of intent to expand the scope of liability to include individuals. Where Congress expressly stated its intent to expand the definition of a whistleblower and added *specific* language to effectuate that intent, it strains common sense to read Congress's *silence* in the same sentence of the statute as effectuating an *unexpressed* intent to expand the class of defendants subject to liability under the statute.

7

> That is particularly true in light of the . . . presumption that Congress was aware that courts had uniformly rejected individual liability under section 3730(h). Thus, if Plaintiff is correct, Congress overturned this line of authority by negative implication. That seems unlikely given that Congress could have simply replaced "employer" with "any person." . . . That Congress chose not to use that phrase–or a similar one–in section 3730(h) makes it more likely that Congress deleted the word "employer" not to provide for individual liability but to avoid confusion in cases involving a "contractor or agent" rather than an "employee."
>
> It is also notable that the 2009 amendment did not change the remedies available under section 3730(h) . . . [, which include mandatory reinstatement] . . . . The Court of Appeals cited this mandatory language in rejecting individual liability under the pre-amendment version of section 3730(h) on the common sense ground that "remedies such as reinstatement" are remedies "[that] a mere supervisor could not possibly grant in his individual capacity." *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001). The same logic remains sound even after the 2009 amendment; interpreting amended section 3730(h) to provide for individual liability is inconsistent with the mandatory remedy of reinstatement.
>
> The foregoing considerations taken together . . . lead[] the Court to conclude that Congress deleted the relevant language not to provide for individual liability but as a grammatical necessity of expanding the statute's protections to cover a "contractor" or "agent" in addition to an "employee."

25 F. Supp. 3d 376, 385 (S.D.N.Y. 2012) (footnotes omitted) (emphasis in original); *see United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 813 (N.D. Cal. 2014) ("The 2009 amendment to the retaliation provision was meant only to broaden the category of 'employee' eligible for whistleblower protection . . . , not to broaden the class of persons subject to liability under the provision."); *Perez-Garcia v. Dominick*, No. 13 C 1357, 2014 WL 903114, at *5 (N.D. Ill. Mar. 7, 2014) (relying on *Aryai* and stating that "[a]lthough the issue remains an open question in this and other circuits, the Court . . . holds that the amended FCA . . . provides no right of action against Defendants in their individual capacities."); *Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013) ("[T]he court . . . agrees [with *Aryai*] that the 2009 amendment to § 3730(h) was not intended to . . . [and] does not contemplate individual liability

for FCA whistleblower retaliation"); *Russo v. Broncor, Inc.*, 13-cv-348-JPG-DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013) ("This Court finds the reasoning of *Aryai* persuasive and . . . . finds that Congress did not intend to impose liability on individuals when it removed the phrase "by his or her employer" in the 2009 amendment."); *U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, No. 2:09-1858-RMG, 2012 WL 6892716, at *3 n.4 (D.S.C. May 3, 2012) ("[T]he removal of the term 'employer' . . . was a device to accommodate the broader group of potential plaintiffs who are in employee type roles but who may not technically be employees and the broader group of potential defendants who are in employer type roles but may not technically be employers. There is no indication in the revised statutory language of the 2009 amendments or in the legislative history that indicates a Congressional intent to broaden the scope of § 3730(h) to include potential defendants who have no employer type relationship with plaintiffs."), *aff'd*, 475 F. App'x 851 (4th Cir. 2012); *but see U.S. ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09cv1127 (JBA), 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (holding, without analysis, that the post-2009 version of § 3730(h) contemplates individual liability); *Weihua Huang v. Rector & Visitors of Univ. of Va.*, 896 F. Supp. 2d 524, 548 n.16 (W.D. Va. 2012) ("[B]y eliminating the reference to 'employers' as defendants in § 3730(h)(1), the 2009 amendment effectively left the universe of defendants undefined and wide-open."). The Court agrees with the reasoning of *Aryai* and its progeny that the 2009 amendment to § 3730(h) did not create individual liability for FCA retaliation claims. Therefore, Schoewe and Gentile's motions to dismiss Count III are granted.

In Count IV, relator asserts claims under the Illinois False Claims Act ("IFCA"), which "mirrors the [FCA], imposing liability on those who submit or cause the submission of false claims to the State." *Mason v. Medline Indus., Inc.*, No. 07 C 5615, 2009 WL 1438096, at *2 (N.D. Ill.

May 22, 2009); *see* 740 Ill. Comp. Stat. 175/3(a)(1) (imposing liability on any one who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"). In Count V, she alleges that Schoewe and Gentile violated the Illinois Insurance Claims Fraud Prevention Act by submitting false insurance claims. *See* 740 Ill. Comp. Stat. 92/5(b), 15(a) (creating a private cause of action against any one who violates the criminal code sections relating to insurance fraud); 720 Ill. Comp. Stat. 5/17-10.5(a)(1) (stating that a person commits insurance fraud when he "knowingly obtains . . . or causes to be obtained, by deception, control over the property of an insurance company . . . by the making of a false claim or by causing a false claim to be made . . . intending to deprive an insurance company . . . permanently of the use and benefit of that property"). Thus, relator's Count IV and V claims against Schoewe and Gentile suffer the same fate as her Count I FCA claims against them – those asserted against Schoewe fail, and those asserted against Gentile survive.

## Conclusion

For the reasons set forth above, the Court: (1) grants Schoewe's motion to dismiss [55], dismisses Count III with prejudice, and dismisses Counts I, II, IV and V without prejudice; and (2) grants Gentile's motion to dismiss in part as to Count III, which is dismissed with prejudice, and Count II, which is dismissed without prejudice, but otherwise denies the motion [62]. Relator has until September 4, 2015 to amend Count II to state a viable claim against Schoewe and Gentile and Counts I, IV, and V to state viable claims against Schoewe, if she can do so and comply with Rule 11. If relator fails to do so, the Court will dismiss those claims with prejudice.

**SO ORDERED.**             **ENTERED:   August 20, 2015**

_____
**JORGE L. ALONSO**
**United States District Judge**