IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS ex rel., KENYA SIBLEY, <br><br>      Plaintiffs-Relator, <br><br>v. <br><br>A PLUS PHYSICIANS BILLING SERVICE, INC., HANDRUP and ASSOCIATES, and ERIC SCHOEWE, LAURIE GENTILE, and THEODORE HANDRUP individually, <br><br>      Defendants. | No. 13 C 7733 <br><br> Judge Jorge L. Alonso <br> Magistrate Judge Maria Valdez |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ERIC SCHOEWE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO RULES 12(b)(6) AND 9(b)**

Defendant Eric Schoewe ("Schoewe"), by and through his attorneys, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

**I.    INTRODUCTION**

The Third Amended Complaint ("Complaint" or "TAC") represents Plaintiff-Relator Kenya Sibley's ("Relator" or "Sibley") fourth futile attempt to state a claim against Schoewe individually. On August 20, 2015, the Court granted Schoewe's Motion to Dismiss Relator's Second Amended Complaint in its entirety. Relator filed her Third Amended Complaint on September 14, 2015, reasserting claims against Schoewe, individually, for: (1) violation of the federal False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") (Count I); (2) violation of the Illinois False Claims Act, 740 ILCS 175/1. *et seq.* ("IFCA") (Count IV); and (3) violation of the

Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/15(a) ("ICFPA") (Count V). (*See* TAC ¶¶ 1, 122 – 156.) Relator has once again made insufficient conclusory allegations only against Schoewe. She still fails to allege with particularity facts which, if proven, would meet the elements of her claims against Schoewe. Accordingly, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), the Court should once again dismiss Relator's Complaint against Schoewe, this time with prejudice.

## II.   STATEMENT OF FACTS[1]

The following is the *full extent* of Relator's allegations against Schoewe:

- Schoewe is co-owner and President of A Plus. Schoewe is directly involved in day-to-day operations and is the individual primarily responsible for: (1) submitting claims for reimbursement from public and private insurers; (2) payments to A Plus treater/clients; (3) training staff on billing protocols and procedures; and (4) assigning doctors and/or bills to staff billers, with assistance from Gentile. (TAC ¶¶ 10 – 11, 13.)

- A few times per week, Schoewe would pick up or receive billing forms from Defendant Handrup and other clients. Schoewe would then review and organize the documents and assign the original billing forms to designated billers who were responsible for entering the billing codes into A Plus computers for submission to the government and private carriers. Gentile and Schoewe would then pick up the completed billing forms from their billers and submit them to a third-party clearing house. (*Id*. ¶¶ 41 – 43.)

- Gentile and Schoewe instructed billers, including Ms. Sibley, to change points of service, to complete blank Superbills and to alter the names of the providers or therapists. (*Id*. ¶ 46.)

- Schoewe personally submitted a majority of A Plus' claims including those claims which Sibley told him were fraudulent. (*Id*. ¶ 51)

- Schoewe practiced "default" billing at A Plus by training and ordering other employees to create billing information and alter bills for submission of payment. (*Id*. ¶¶ 52 – 53.)

---

[1] The relevant allegations are all taken from Relator's Complaint. The allegations are assumed to be true only for purposes of this motion to dismiss.

- Following a conversation Relator had with her temp recruiter, Ryan Palmer, Schoewe and Gentile summoned Plaintiff into Schoewe's office to discuss her concerns. (*Id*. ¶ 56.)

- Relator complained to both Gentile and Schoewe over the course of several months, but *Gentile* continued to bill the incomplete or altered bills from defendant Handrup that Relator had refused to process. (*Id*. ¶ 57) (emphasis added.)

- In February 2012, Schoewe announced that Gentile would be retiring from day-to-day operations in May 2012 and moving to Arizona. (*Id*. ¶ 134.)

- In February or March 2012, Relator was called into a meeting with Schoewe, Gentile and Drs. Theodore and Cynthia Handrup, co-owners of Handrup & Associates, to discuss transition of primary oversight of their account from Gentile to Relator. (*Id*. ¶¶ 58, 135.) At this meeting, the Handrup defendants sought assurances that the same billing methods would continue and indicated a desire to avoid Medicare red flags. (*Id*. ¶¶ 59, 137.) Schoewe and Gentile agreed to keep the numbers up and promised to continue billing in the same fashion. (*Id*. ¶ 138.) Following the meeting, Relator approached Schoewe and informed him that once she took over the Handrup account, she would not continue to bill improperly. Schoewe told Relator she could trust that he was okay with her billing properly, and also asked her for evidence of the alleged fraud. (*Id*. ¶¶ 60, 139.) Relator produced a stack of documents. Schoewe told Relator to keep billing the same way and in the meantime, he would reach out to Handrup's physicians to request that they provide additional documentation. (*Id*. ¶ 61.)

- In or about the end of April 2012, after Relator began compiling incomplete bills on her desk and refusing to bill them, Schoewe approached Relator to inquire about the backlog and a reduction in revenue on the Handrup account. Schoewe stated that he could not risk losing the Handrup account and again requested that Sibley fill in blank superbills. When Relator responded that no reimbursements had been made because she was unable to submit certain claims based on lack of sufficient information, Schoewe told Sibley to keep "working with" him and ordered her to get the claims approved. (*Id*. ¶¶ 62, 141.)

- In a subsequent meeting, Schoewe asked Relator not to use the word "illegal" in her communications with clients because he was concerned about how it would affect A Plus' relationship with Handrup. (*Id*. ¶ 64.)

- In June 2012, Schoewe told Relator that he did not plan to respond to one of her recent e-mails because he did not want to create a "paper trail," especially because Sibley was using the word "illegal" in her e-mail. (*Id*. ¶ 68.)

- From 2011 through 2012, Relator witnessed hundreds of false claims submitted by Gentile and Schoewe to the government and private carriers. (*Id*. ¶ 69.)

- Schoewe was aware of the practice of changing providers, and instructed Sibley to change providers to ensure reimbursement. (*Id*. ¶ 109).

- Schoewe was aware of the widespread submission of bills where inadequate information had been provided and submission of false claims. (*Id*. ¶ 116.) Despite this knowledge, Schoewe continued the relationship and submission of bills on behalf of the Handrup defendants. (*Id*. ¶¶ 119 – 120.)

- Schoewe told Sibley that her bonus depended on maintaining a certain level of reimbursements. (*Id*. ¶ 123.)

- In or about early August 2012, Schoewe called Relator into a meeting, where he informed her that while she was on medical leave during July, A Plus was able to generate more revenue on behalf of the Handrup account and asked if she would be able to maintain the current level of revenue generation going forward. When Relator stated that she would not because she would not submit "illegal" claims for services provided in the manner documented, Schoewe told her not to return to work. (*Id*. ¶ 143.)

## III. ARGUMENT

### A. Standards of Review Under Rules 12(b)(6) and 9(b)

To survive a motion to dismiss, Relator must allege specific facts that will support each of the elements of each of her claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Pleading bare legal conclusions is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (even under more lenient Rule 8 standard, pleading mere conclusions insufficient).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' '

*Id.* (evaluating complaint under Rule 8) (citing *Twombly*, 550 U.S. at 555-57).

Claims brought under the FCA are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604

(7th Cir. 2005) (citation omitted). Under this rule, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The heightened pleading standard serves three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing strike suits and fishing expeditions; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citations and internal quotation marks omitted). Accordingly, Rule 9(b) requires a plaintiff to "do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Specifically, a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.*, 20 F.3d at 777 (citations omitted). In other words, a plaintiff must do "more than the usual investigation before filing his complaint." *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007) (overruled on other grounds). She must plead the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436,441-42 (7th Cir. 2011) (citation and internal quotation marks omitted).

    **B.**    **Count I Against Schoewe Should Be Dismissed Pursuant to Rules 12(b)(6) and 9(b) Because Relator Has Not Alleged Facts Sufficient to State A Claim For Violation of the FCA**

Relator still has not alleged specific facts sufficient to establish individual liability on the part of Schoewe for alleged violations of the FCA. The FCA imposes civil liability for a series of actions under sections 3729(a)(1)(A) and 3729(a)(1)(B). 31 U.S.C. § 3729(a). Here, Relator alleges violations of sections 3729(a)(1)(A) and 3729(a)(1)(B). (TAC ¶¶ 148 – 149.) Section

3729(a)(1)(A) imposes civil liability on any person who knowingly presents a false or fraudulent claim to the government for payment or approval. 31 U.S.C. § 3729(a)(1)(A). In order to state a claim under this section, Sibley must allege three elements: (1) a false or fraudulent claim; (2) was presented, or caused to be presented, by Schoewe to the United States for payment or approval; (3) with the knowledge that the claim was false. *U.S. ex rel. Walner v. Northshore Univ. Healthsystem*, 660 F. Supp. 2d 891, 896 (N.D. Ill. Sept. 18, 2009). Relator also alleges a violation of section 3729(a)(1)(B), under which civil liability may be imposed on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to the false or fraudulent claim. *See* 31 U.S.C. § 3729(a)(1)(B). To state a claim under this section, Sibley must allege that: (1) Schoewe made a statement in order to receive payment from the government; (2) the statement was false; and (3) Schoewe knew it was false. *Id.*

Relator has not satisfied the elements of either section with respect to Schoewe individually. Indeed, the Complaint still does not identify a single claim that was allegedly submitted (or a statement allegedly made) by Schoewe that he knew was false. *United States ex rel. Wildhirt v. AARS Forever, Inc.*, No. 09 C 1215, 2011 WL 1303390, at *3 (N.D. Ill. Apr.. 6, 2011)*; United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 377 (7th Cir. 2003) (affirming dismissal of FCA claim because "the pleadings [do not allege] a single instance of a false statement made to obtain payment"). While Relator asserts a handful of new and conclusory allegations – including that Schoewe "personally submitted a majority of A Plus' claims including those claims which Sibley told him were fraudulent" (TAC ¶ 51) – these allegations still fail to identify any specific claim(s) allegedly submitted by Schoewe. Further, Relator's attachment of certain sample documents allegedly reflecting blank and/or incomplete billing sheets does not cure this deficiency. Schoewe's name does not appear on any of these

documents. Nor does Relator allege that Schoewe submitted any of these bills. In fact, each of the sample bills provided are from the Handrup account, which Relator separately alleges was handled (and submitted for reimbursement) by Gentile, not Schoewe. (*See id.* ¶¶ 42, 57.) Thus, any implication that Schoewe submitted them for reimbursement is inconsistent with Relator's own allegations and should be disregarded.

Relator's FCA claim fails for the additional reason that, even if the Complaint could be construed as identifying one or more claims submitted by Schoewe, there is no allegation that he knew any such claim was false. Relator recounts several alleged meetings and e-mails through which she purports to have informed Schoewe of her concerns with the billing practices of others at A Plus, specifically on the Handrup account. (*See, e.g.*, *id.* ¶¶ 56 - 57, 62.) Relator fails, however, to assert that a specific claim she allegedly informed Schoewe was false was actually submitted *by Schoewe*, as required for individual liability to attach under the FCA. *See Garst*, 328 F.3d at 377. Accordingly, Relator's FCA claim against Schoewe fails pursuant to Rule 12(b)(6).

Even if Relator can meet her obligations under Rule 12(b)(6) (she cannot), Relator's "new" allegations relating to Schoewe are all conclusory in nature and fail to meet the heightened pleading standard under Rule 9(b). While Relator alleges generally that Schoewe: (1) instructed billers to change points of service, complete blank Superbills and alter the names of providers and therapists (*see* TAC ¶ 46); (2) ordered employees to create billing information and alter bills (*see id.* ¶ 52); and (3) instructed Sibley to change providers to ensure reimbursement (*id.* ¶ 109), she fails to identify a single specific instance in which Schoewe allegedly gave her (or any other biller) such an instruction, including the "who, what, when, where and how" of his

alleged participation.[2] *Pirelli Armstrong Tire Corp.*, 631 F.3d at 441-42 (7th Cir. 2011). Rather, she pleads these required elements only as conclusions. Once again, Relator attempts to mask these deficiencies by attaching and referencing documents that purportedly reflect such instructions; however, the only reference to Schoewe contained in any of these documents is a single statement that "Eric faxes EOBs to Dr." (*See* Complaint Group Ex. A, KS000092.) These documents appear to be Relator's own self-serving notes from the training that she admits she received from Gentile, not Schoewe. (TAC ¶ 53.) This is insufficient to meet her obligations under Rule 9(b).

Finally, despite the Court's order granting Schoewe's prior Motion to Dismiss, Relator continues to improperly allege certain critical facts against the "A Plus defendants" in a collective fashion. For example, Relator attaches sample Superbills that she alleges were "blank in terms of procedures or codes, and were completed by the *A Plus defendants*." (TAC ¶ 41) (emphasis added.) The problem is that the only "A Plus defendant" is the company. Nonetheless, Relator continues to attempt to impute the alleged conduct of certain individuals to others at A Plus, including Schoewe. This type of "group" pleading is improper and insufficient to support a claim against Schoewe individually. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint for failure to satisfy Rule 9(b) where allegations lumped all defendants together and failed to specify who was involved in what allegedly fraudulent activity).

---

[2] While the Complaint contains other allegations specific to Schoewe regarding statements he allegedly made to Relator about, among other things, her bonus (TAC ¶ 123), performance (*id*. ¶¶ 141), use of the word "illegal" in client communications (*id*. ¶¶ 64, 68), and termination (*id*. ¶ 143), none of these directly allege or give rise to an inference that Schoewe himself submitted any claims for reimbursement to Medicare that he knew to be false or that he in any other way engaged in fraud.

### C. Count IV Against Schoewe Should Be Dismissed Pursuant to Rules 12(b)(6) and 9(b) Because Relator Has Failed to Allege Facts Sufficient to State A Claim For Violation of the IFCA

Similar to her claim in Count I for violation of the FCA, Relator has not alleged specific facts sufficient to establish individual liability on the part of Schoewe for violation of the IFCA. The IFCA is materially identical to the FCA and subject to the same pleading standards and analysis. *See Wildhirt*, 2011 WL 1303390 at *2. Thus, in order to state a claim against Schoewe for violation of the ICFA, Relator must allege, at a minimum, that Schoewe actually submitted a specific claim for payment to the government, and that he knew that claim to be false. *Id.* at *3. As set forth above, Relator has not made any such allegations.

Relator has likewise failed to meet her burden under Rule 9(b) of pleading facts constituting the alleged fraud with particularity. Again, as set forth above, Relator has failed to allege specific facts regarding Schoewe's involvement, including the "who, what, when, where and how" behind his purported involvement in the allegedly false claim(s). Accordingly, for all the same reasons identified above, Count IV of Relator's Complaint for violation of the Illinois False Claims Act against Schoewe should be dismissed.

### D. Count V Against Schoewe Should Be Dismissed Pursuant to Rules 12(b)(6) and 9(b) Because Relator Has Failed to Allege Facts Sufficient to State A Claim For Violation of the ICFPA

Like her claims in Counts I and IV for alleged violations of the FCA and the IFCA, Relator has failed to allege facts sufficient to establish individual liability on the part of Schoewe for violation of the ICFPA. Relator asserts a civil cause of action against Schoewe under the ICFPA based upon his alleged commission of the crime of insurance fraud pursuant to 720 ILCS 5/46-1, which provides, in relevant part, that "a person commits the offense of insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false

claim or by causing a false claim to be made on any policy of insurance issued by an insurance company . . ." (TAC ¶¶ 152 – 153.) Relator alleges, in conclusory fashion, that "Defendants violated 720 ILCS § 5/46-1(a) and committed insurance fraud in that from at least 2011, and continuing through August 2012, they have repeatedly, knowingly and intentionally, presented, or caused to be presented, false claims for payment in connection with medical and psychological healthcare services." (TAC ¶ 154.) However, with respect to Schoewe, this conclusory allegation suffers from the same deficiencies as Counts I and IV, as discussed above, and should also be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, Schoewe requests that the Court (a) grant his Motion to Dismiss; (b) dismiss Relator's claims against him in their entirety and with prejudice; (c) award Schoewe his costs of suit; and (d) grant such other relief as the Court deems just and proper.

Dated: October 19, 2015

Respectfully submitted,

ERIC SCHOEWE

By:   s/ Joshua A. Dunn
      One of His Attorneys

James V. Garvey, Bar No. 06224992
Joshua A. Dunn, Bar No. 6299697
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 (312) 609 7500

# CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2015, I filed the attached **Memorandum of Law in Support of Defendant Eric Schoewe's Motion to Dismiss Third Amended Complaint Pursuant to Rules 12(b)(6) and 9(b)** with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record:

Kathryn A. Kelly, AUSA
Everett McKinley Dirksen Bldg.
U.S. Attorney's Office – Civil Div.
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

Joseph Chervin
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street, 12th Floor
Chicago, IL 60601

Scott D. Hammer
Karen E. Bettcher
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, IL 60603
scott.hammer@wilsonelser.com
 Direct (312) 821-7617
karen.bettcher@wilsonelser.com
 Direct (312) 821-6111

*Attorneys for Defendants Theodore B. Handrup, M.D., Theodore B. Handrup, M.D., Ltd and Handrup and Associates*

Robin B. Potter
Robin Potter & Associates, PC
111 E. Wacker Drive #2600
Chicago, IL 60601
(312) 861-1800
robin@potterlaw.org

*Attorney for Plaintiff*

Eric James Chisholm
Jefferey Ogden Katz
Michael Demuri Haeberle
The Patterson Law Firm LLC
One North LaSalle Street, Suite 2100
Chicago, IL 60602
echisholm@pattersonlawfirm.com
 Direct (312) 223-1699
jkatz@pattersonlawfirm.com
 Direct (312) 750.1817
mhaeberle@pattersonlawfirm.com
 Direct (312) 223-1699

*Attorneys for Plaintiff*

Barry Spevack
Michael D. Monico
Monico & Spevack
20 South Clark Street, Suite 720
Chicago, Il 60603
312-782-8500
bspevack@monicolaw.com
mm@monicolaw.com

*Attorneys for Defendant Laurie Gentile*

                                          <u>/s/ Joshua A. Dunn</u>
                                          Joshua A. Dunn
                                          Vedder Price P.C.
                                          222 North LaSalle Street, Suite 2600
                                          Chicago, IL  60601
                                          Direct (312) 609-7510
                                          jdunn@vedderprice.com