**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF ILLINOIS ex rel. KENYA SIBLEY, | ) ) ) ) | |
| Plaintiff, | ) ) | 13 C 7733 |
| v. | ) ) ) | Judge Jorge L. Alonso |
| A PLUS PHYSICIANS BILLING SERVICE, INC., HANDRUP and ASSOCIATES, ERIC SCHOEWE, LAURIE GENTILE, and THEODORE HANDRUP, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Relator, on behalf of the United States and the State of Illinois, sues defendants for their alleged violations of the federal and state False Claims Acts ("FCAs") and the Illinois Insurance Claims Fraud Prevention Act. Defendants Laurie Gentile and Eric Schoewe have filed Federal Rule of Civil Procedure ("Rule") 12(b)(6) motions to dismiss Count II, and Counts I, IV, and V, respectively, of the third amended complaint.[1] For the reasons set forth below, the Court grants both motions.

**Facts**

From June 2011 to July 2012, relator worked as a medical biller for defendant A Plus Physicians Billing Service, Inc. ("A Plus"). (3d Am. Compl. ¶ 8.) A Plus is a billing agency that

---

[1]Defendants A Plus Physicians Billing Service, Inc., Handrup and Associates, and Theodore Handrup have answered the third amended complaint.

submits claims for reimbursement to public and private insurers on behalf of its healthcare-provider clients and, in return, receives a percentage of the reimbursement amounts recovered. (*Id.* ¶¶ 9, 39, 43, 47.) Defendant Schoewe is the president and a co-owner of A Plus and "is primarily responsible for . . . the submission of claims for reimbursement to public and private insurers." (*Id.* ¶¶ 10-11.) Defendant Gentile was relator's supervisor at A Plus until early 2012 and assisted Schoewe with claims submissions. (*Id.* ¶¶ 12-13.)

Health care providers and billing agencies like defendants use Current Procedural Terminology ("CPT") codes, which are "a uniform way to describe medical, surgical and diagnostic services provided to patients," to bill private and governmental insurers. (*Id.* ¶¶ 30-31.) To properly submit a claim, A Plus should receive a "superbill" from a client that sets forth, among other things, the name of the patient and healthcare provider, the service provided, the date and location of the service, the proper CPT code, and the amount charged. (*Id.* ¶¶ 30, 33, 87.) An A Plus biller then inputs the CPT codes and the codes for the healthcare provider and location into a computer program that generates a claim form that is sent to A Plus' billing vendor for submission to the appropriate insurer. (*Id.* ¶¶ 78-81.)

In reality, however, A Plus' clients, including defendant Handrup and Associates, did not provide some or all of the necessary information on the superbill. (*Id.* ¶¶ 46, 50, 87.) Thus, A Plus had a "default" protocol pursuant to which the codes would be added based on the assumption that subsequent treatments replicated the first. (*Id.* ¶¶ 46, 50, 88.) Gentile and Schoewe trained relator and other billers to engage in default billing and "order[ed] employees [including relator] to create billing information and alter bills" according to the default protocol. (*Id.* ¶¶ 52, 53, 88, 109.) In addition, Gentile filled in CPT codes, Place of Service ("POS") codes, and diagnoses on superbills

2

without supporting documentation, told relator to change or select certain CPT and POS codes or to use different CPT codes to bill different insurers for the same service, and told relator to change provider names to those covered by the patients' insurance – all to maximize reimbursements. (*Id.* ¶¶ 72-73, 89-96, 98-100, 103-05, 108, 110, 112-13, 115.) Schoewe was "aware of the widespread submission of bills where inadequate information had been provided." (*Id.* ¶ 116.)

Starting in October 2011 and continuing throughout her employment, relator repeatedly told Schoewe that filling in blank superbills and changing codes on bills was illegal. (*Id.* ¶¶ 54-57, 60-62, 65-66, 110, 131.)

One morning in early 2012, relator opened an envelope with "Laurie" handwritten on it. (*Id.* ¶¶ 125-27.) Inside the envelope was a check from Handrup payable to Gentile. (*Id.* ¶ 127.) Relator resealed the envelope and gave it to Gentile. (*Id.* ¶ 128.) Later that day, Gentile told relator, "'[O]nce you take over this account you will be able to get checks like this. Just hang in there.'" (*Id.* ¶ 129.)

In March 2012, shortly after Gentile announced her impending retirement, relator met with Schoewe, Gentile, and the principals of Handrup and Associates, Dr. Theodore Handrup and Mrs. Cynthia Handrup, to discuss relator's taking responsibility for the Handrup account from Gentile. (*Id.* ¶ 58.) During the meeting, Dr. Handrup "sought assurances that the same methods of blank superbilling, alterations to the provider identity and other frauds would continue in the same fashion as Ms. Gentile had billed" and that relator would "avoid raising any 'red flags'" with Medicare. (*Id.* ¶ 59.) After the meeting, relator told Schoewe that she would not bill illegally and gave him documents that "evidence[d] . . . the frauds which she had been complaining about." (*Id.* ¶ 60.)

"Schoewe told [relator] to keep billing the same way, and in the meantime, he would reach out to Handrup's physicians to request that they provide additional documentation." (*Id.* ¶ 61.)

From March through July 2012, relator was in charge of the Handrup account and she refused to make claims for bills with incomplete information. (*Id.* ¶¶ 62, 140.) Schoewe told her "that he could not risk losing the Handrup account" and asked her to "fill in blank superbills." (*Id.* ¶ 62.) When she refused, Schoewe ordered her to get the claims approved. (*Id.* ¶¶ 62, 140-41.)

On June 21, 2012, relator told Dale Schroeder, a Handrup employee, in an email that she would not make changes to superbills, as Schoewe had asked her to do and Gentile had previously done, because it was illegal to do so. (*Id.* ¶¶ 65-67.) Relator copied Schoewe on the email. (*Id.* ¶ 65.)

In July 2012, relator took three weeks' medical leave from work. (*Id.* ¶ 142.) When she returned in August, Schoewe told her that A Plus was able to generate more revenue from the Handrup account in her absence and asked if she could maintain that level of revenue generation. (*Id.* ¶ 143.) Relator said she would not submit improper claims, and Schoewe fired her. (*Id.*)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in relator's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Gentile's Motion**

Gentile contends that the allegations of the third amended complaint do not state a viable federal FCA kickback claim against her. *See* 42 U.S.C. § 1320a-7b(b) ("Anti-Kickback Statute") (making it a felony "[to] knowingly and willfully solicit[] or receive[] any remuneration (including any kickback, bribe, or rebate) . . . in return for purchasing . . . or ordering any good . . . [or] service . . . for which payment may be made in whole or in part under a Federal health care program"); *U.S. ex rel. Sharp v. Consol. Med. Transp., Inc.*, No. 96 C 6502, 2001 WL 1035720, at *6-10 (N.D. Ill. Sept. 4, 2001) (recognizing a cause of action under the FCA predicated on a violation of the Anti-Kickback Statute). To state such a claim, relator must allege, with the specificity required by Rule 9(b), that Gentile: "(1) knowingly and willfully (2) offered[,] paid[, solicited or received] (3) remuneration (4) in return for purchasing or ordering any item or service for which payment may be made under a federal health care program." *United States v. Omnicare, Inc.*, 11 C 8980, 2014 WL 1458443, at *9 (N.D. Ill. Apr. 14, 2014); *see* 42 U.S.C. § 1320a-7b(b). Plaintiff's "kickback" allegations are that: (1) relator, unbeknownst to Gentile, saw a check, in an unspecified amount, from Handrup payable to Gentile; and (2) though Gentile did not know that relator had seen the check, Gentile later told relator that relator could get "checks like this" once she took over the Handrup account. (3d Am. Compl. ¶¶ 126-29.) Given these disjointed allegations, it is not reasonable to infer that Gentile's "checks like this" comment even refers to the check plaintiff saw, let alone that the check was a kickback from Handrup. Accordingly, the Court grants Gentile's motion to dismiss Count II.

**Schoewe's Motion**

In Count I, relator alleges that Schoewe violated § 3729(a)(1)(A) and (B) of the federal FCA, which provides:

> [A]ny person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A), (B). To state a viable claim under § 3729(a)(1)(A), relator must allege that Schoewe presented, or caused to be presented, a claim for payment to the United States that he knew was false or fraudulent. *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009). To state a viable claim under § 3729(a)(1)(B), relator must allege that Schoewe knowingly made or caused to be made a false statement to receive payment from the government. *U.S. ex rel. Walner v. NorthShore Univ. Healthsys.*, 660 F. Supp. 2d 891, 896 (N.D. Ill. 2009). Moreover, both claims must be pleaded "with particularity" as required by Rule 9(b). *Id.* at 895-96; *see U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (applying Rule 9(b) to FCA claims).

Schoewe argues that relator's allegations do not support the inference that he knowingly made or caused a false claim to be made to the government. The Court agrees. Relator alleges that, (1) at unidentified times over an eleven-month period, Schoewe gave her unidentified superbills that were missing necessary information; (2) at unspecified times, and over relator's objections, Schoewe told her to fill in codes and change points of service and provider names on unspecified bills; and (3) Schoewe "personally submitted a majority of A Plus' claims including those claims which

[relator] told him were fraudulent." (3d Am. Compl. ¶¶ 41-42, 46, 51-52, 54-57, 60-62, 65-67, 109-10, 131, 141.) These allegations do not sufficiently state "the who, what, when, where, and how" of the alleged fraud, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), and thus do not state a federal FCA claim against Schoewe. *See Garst*, 328 F.3d at 376 (noting that the district court had instructed the plaintiff "(1) [to] identify specific false claims for payment or specific false statements made in order to obtain payment; (2) if a false statement is alleged, connect that statement to a specific claim for payment and state who made the statement to whom and when; and (3) briefly state why those claims or statements were false") (internal quotation marks and emphasis omitted).

In Count IV, relator alleges that Schoewe violated the Illinois False Claims Act ("IFCA"), which "mirrors the [FCA], imposing liability on those who submit or cause the submission of false claims to the State." *Mason v. Medline Indus., Inc.*, No. 07 C 5615, 2009 WL 1438096, at *2 (N.D. Ill. May 22, 2009); *see* 740 Ill. Comp. Stat. 175/3(a)(1) (imposing liability on any one who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"). In Count V, she alleges that Schoewe violated the Illinois Insurance Claims Fraud Prevention Act by submitting false insurance claims. *See* 740 Ill. Comp. Stat. 92/5(b), 15(a) (creating a private cause of action against any one who violates the criminal code sections relating to insurance fraud); 720 Ill. Comp. Stat. 5/17-10.5(a)(1) (stating that a person commits insurance fraud when he "knowingly obtains . . . or causes to be obtained, by deception, control over the property of an insurance company . . . by the making of a false claim or by causing a false claim to be made . . . intending to deprive an insurance company . . . permanently of the use and benefit

7

of that property"). Because viable claims under these statutes require essentially the same allegations as a viable federal FCA claim, which plaintiff has not stated, these claims fail as well.

## Conclusion

For the reasons stated above, the Court grants Schoewe and Gentile's motions to dismiss [117 & 122]. Moreover, because plaintiff has been unable to state viable claims against Schoewe in Counts I, IV, and V or a viable kickback claim against Gentile in Count II, despite having had four opportunities to do so, the Court dismisses those claims with prejudice.

**SO ORDERED.**                                    **ENTERED: December 15, 2015**

_____
**JORGE L. ALONSO**
**United States District Judge**